(No. 50005.—

JOSEPH B. CORYN, Appellant, v. THE CITY OF MOLINE et al., Appellees.

*Opinion filed March 23, 1978.*

196

William M. Walker and James J. Coryn, of Rock Island (Coryn, Walker & Meehan, of counsel), for appellant.

Stuart R. Lefstein, of Rock Island (Katz, McAndrews, Durkee & Telleen, of counsel), for appellees.

Klein, Thorpe & Jenkins, of Chicago (Arthur C. Thorpe and Terrence M. Barnicle, of counsel), and Pfeifer & Kelty, of Springfield, for *amicus curiae* the Illinois Municipal League.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves the power of home rule units "to levy or impose additional taxes upon areas within their boundaries in the manner provided by law for the provision of special services to those areas and for the payment of debt incurred in order to provide those special services" pursuant to section 6($l$)(2) of article VII of our constitution (Ill. Const. 1970, art. VII, sec. 6($l$)(2)) and "An Act to provide the manner of levying or imposing taxes for the provision of special services ***" (Ill. Rev. Stat. 1975, ch. 120, par. 1301 *et seq.* (hereinafter referred to as the "Special Services Act")).

The city of Moline enacted an ordinance designating an area within its boundaries as "City of Moline Special Service Area Number One," within which property would be subject to additional taxes to fund the building and maintenance of a shopping mall. Plaintiff, Joseph B. Coryn, an owner of property located within the proposed special service area, brought this action in the circuit court of Rock Island County, seeking to enjoin the defendants, the city of Moline, and its mayor, its clerk and its treasurer, from executing the ordinance. Plaintiff's theory was that, because the mall involved more than just a "service," and

because the "benefits" of the proposed mall would extend to the city as a whole rather than to the special service area in particular, the proposed shopping mall did not qualify for treatment as a "special service" to his area, and that, even if it did so qualify, financing the mall through the imposition of additional tax on his property would deprive him of property without due process of law. Plaintiff also objected to the statutory procedure for vetoing the plan, which required a petition signed by 51 percent of the local electors, as well as by 51 percent of the owners of record of property within the area (Ill. Rev. Stat. 1973, ch. 120, par. 1309). He claimed that requiring him to obtain the signatures of persons who did not own land subject to tax also deprived him of property without due process of law, and constituted "an invalid delegation of taxing authority."

The circuit court granted defendants' motion for judgment on the pleadings and dismissal of the complaint pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45).

After his post-trial motion was denied, plaintiff filed a notice of appeal to the appellate court, and we granted defendants' motion to transfer the cause directly to this court pursuant to Supreme Court Rule 302(b) (58 Ill. 2d R. 302(b)). We affirm.

An ordinance adopted by a local unit of government, which purports to exercise a power vested in that local unit of government by our constitution (and statutes, if applicable), is presumptively valid. (See generally *Williams v. City of Chicago* (1977), 66 Ill. 2d 423, 432-33.) To justify his request for an injunction against the execution of such an ordinance plaintiff had the burden of pleading facts which, if proved, would have established that the tax was unauthorized because the ordinance was unauthorized, unconstitutional or otherwise invalid. (See generally *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d

318.) We agree with the circuit court that plaintiff has failed to plead such facts.

First, plaintiff has failed to plead facts which would have established that the proposed shopping mall is not a "special service" as that term is used in the Constitution and in the Special Services Act.

The constitutional meaning of the term is the controlling one, because section 6(*l*) of article VII of our constitution expressly prohibits the legislature from limiting the power of home rule units to create special service areas. The scope of the legislature's role is limited to providing the "manner" or procedure for the creation of such areas. We thus construe the scope of the statutory definition of "special services" to be coextensive with that of the constitutional provision.

As with any constitutional or statutory provision, the best indication of the intent of the drafters is the language which they voted to adopt. Here, that language, "special services," not only is itself very broad and unqualified, but "shall be construed liberally" (Ill. Const. 1970, art. VII, sec. 6(m)). Construed liberally, the power to establish special service areas is broad enough to encompass the proposed shopping mall at issue in this case.

The involvement of substantial assets does not prevent this mall from being a "service." The reference in article VII, section 6(*l*), to the use of special services taxes to fund "debt" strongly implies that "special services" often may involve the use of substantial assets, such as those to be acquired in connection with the proposed shopping mall in this case. Debts large enough to require funding over a period of years normally would not be incurred to pay for daily operations. Rather, the reference to "debt" suggests that to provide "special services" a home rule unit may acquire substantial assets which will produce benefits over a period of several years, and be funded through debt instruments payable over a similar period. We find addi-

tional support for this interpretation in the report of the Committee on Local Government of the Sixth Illinois Constitutional Convention, which refers to "capital improvement[s]" as being within the scope of the constitutional provision as originally proposed. (7 Record of Proceedings, Sixth Illinois Constitutional Convention 1662 (hereinafter Proceedings). See also Anderson & Lousin, *From Bone Gap to Chicago: A History of the Local Government Article of the 1970 Illinois Constitution,* 9 J. Mar. J. Prac. & Proc. 698, 778 (1976).

The benefits which allegedly will accrue to the rest of the home rule unit from the proposed mall do not make it "not special" to the area proposed to be taxed. While section 6(*l*)(2) requires that the area taxed must be the area served, the primary determination of that area is left to the home rule unit. The degree and manner of correlation required between the area taxed and the area served is not apparent on the face of the constitutional provision, and we have found no reference to the subject in the proceedings of the constitutional convention. Nor does this court's decision in *Oak Park Federal Savings & Loan Association v. Village of Oak Park* (1973), 54 Ill. 2d 200, shed any light upon the questions presented by the instant case. In *Oak Park* the only question decided by the court was whether the constitutional provision was self-executing. Although the ordinance challenged in *Oak Park* did involve a pedestrian mall, the opinion does not suggest that the ordinance would have been authorized by the Constitution but for the absence of enabling legislation.

We conclude that the potential impact of this proposed mall upon the city of Moline as a whole does not prohibit its treatment as a special service to "City of Moline Special Service Area Number One." If the project reasonably could have been expected by the home rule unit to make the area taxed, in particular, a better place in which to reside or to conduct business, it qualifies as a

"special service" even though it also may redound to the benefit of the remainder of the home rule unit.

Nor does plaintiff's allegation that his additional taxes will exceed any additional benefits received allege facts constituting a denial of due process or of the equal protection of the laws. The taxes imposed upon property within a special services area need not directly correspond to the monetary value of the benefits received. (See *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 79-80; *cf. Memphis & Charleston Ry. Co. v. Pace* (1930), 282 U.S. 241, 75 L. Ed. 315, 51 S. Ct. 108.) Under the equal protection and due process clauses of the constitutions of Illinois and the United States there need only be a rational basis for taxing a given area for a given "special service," and we hold that the mere alleged excess of additional taxes payable over additional services received does not render the whole scheme of taxation irrational and unconstitutional. Our holding on this point, however, does not mean that local units of government are completely free to gerrymander the boundaries of special service areas to maximize revenues, without regard to whether there is a rational relationship between the property taxed and the property served. Evidence of such fraudulent procedures might justify invocation of a court's equity jurisdiction. (*Cf.* generally, *La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318.) There is no such allegation in the pleadings of this case, and we see no way for plaintiff to amend his pleadings to state such allegations without completely changing his theory of the case.

Finally, we hold that the procedure provided by the Special Services Act for the veto of the creation of special services areas neither denies plaintiff due process and the equal protection of the laws nor constitutes "an invalid delegation of taxing power."

The veto procedure provided by section 9 of the Special Services Act (Ill. Rev. Stat. 1973, ch. 120, par.

1309) does not deny plaintiff due process or the equal protection of the laws because there is a rational basis for requiring the signatures of persons other than the owners of record of property to block the project. Other residents of the area have a significant stake in its character, and many of them, as leaseholders, indirectly may be subject to the additional taxes imposed. Nor is this procedure an "invalid delegation of taxing power," for it delegates even less power to the voters than the referendum procedure upheld in *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Judgment affirmed.*