(No. 75399.—

CATHY BAKER, Appellant, v. GRACE MILLER, d/b/a Miller's Metropole, *et al.*, Appellees.

*Opinion filed May 26, 1994.*

250

HARRISON, J., dissenting.

Gary G. Johnson, of Bloomington, for appellant.

Rex L. Reu, of Bloomington, for appellees.

Randall D. Schmidt, of Chicago, for *amicus curiae* Willie Pridgett.

Cynthia A. Wilson, of Chicago, for *amicus curiae* Chicago Lawyers Committee for Civil Rights Under Law, Inc.

JUSTICE FREEMAN delivered the opinion of the court:

The issue presented in this appeal is whether a claim for employment discrimination may be brought directly under article I, section 17, of the Illinois Constitution (Ill. Const. 1970, art. I, §17).

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Cathy Baker, is a former employee of a tavern business owned by defendant Grace Miller, doing business as Miller's Metropole, and managed by Richard Yeast (hereinafter referred to collectively as defendants). The tavern employs fewer than 15 employees. On June 24, 1991, defendant Yeast discharged plaintiff from her duties as bartender at the tavern.

Subsequently, plaintiff filed a two-count complaint in the circuit court of McLean County against defendants seeking to recover damages for employment discrimination. In count I of her complaint, plaintiff al-

leged that she was terminated from her employment, in violation of article I, section 17, of the Illinois Constitution (Ill. Const. 1970, art. 1, §17), because she is female. Count II realleges the allegations in count I and additionally alleges that plaintiff was discharged from her employment by defendant Yeast. Each count sought compensatory damages in "an amount greater than $15,000" and punitive damages in the amount of $20,000.

Defendants filed a motion to dismiss the complaint. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) In their motion, defendants asserted that the plaintiff could not maintain a direct action under article I, section 17, of the constitution. Further, defendants asserted that the "hiring and promotion practices" language contained in article I, section 17, of the constitution does not extend to an employer's termination and discharge practices.

Following a hearing on the motion, the trial court granted defendants' motion and dismissed the complaint with prejudice. The appellate court affirmed (242 Ill. App. 3d 44), and we granted plaintiff's petition for leave to appeal (134 Ill. 2d R. 315). The Chicago Lawyers' Committee for Civil Rights Under Law, Inc., and Willie Pridgett, an interested private citizen, were granted leave to file an *amicus* brief in support of plaintiff. For the reasons which follow, we now affirm.

### DISCUSSION

Article I, section 17, of the Illinois Constitution provides:

"All persons shall have the right to be free from discrimination on the basis of race, color, creed, national ancestry and sex in the hiring and promotion practices of any employer or in the sale or rental of property.

These rights are enforceable without action by the General Assembly, but the General Assembly by law may establish *reasonable exemptions* relating to these rights and provide additional remedies for their violation." (Emphasis added.) Ill. Const. 1970, art. I, §17.

The first clause of section 17 broadly grants to Illinois citizens the right to be free from discrimination in housing and employment. The second clause makes clear that the provision is self-executing; no implementing legislation is necessary to sustain a cause of action for section 17 discrimination. Also included in that clause, however, is an express grant of authority empowering the legislature to "establish reasonable exemptions" relating to the rights guaranteed. Discrimination of the type prohibited by section 17, if committed by government, is prohibited by the due process and equal protection clauses of the fourteenth amendment and the comparable provisions in the 1970 Constitution. (Ill. Ann. Stat., 1970 Const., art. I, §17, Constitutional Commentary (Smith-Hurd 1971).) Section 17 supplements the equal protection clause in that it provides a constitutional right for persons to be free from discrimination committed by private persons. Ill. Ann. Stat., 1970 Const., art. I, §17, Constitutional Commentary (Smith-Hurd 1971).

The guarantees provided by article I, section 17, are implemented by the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1991, ch. 68, par. 1—102(F)). The Act provides a comprehensive scheme to "secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations." (Ill. Rev. Stat. 1991, ch. 68, par. 1—102(A).) Further, the Act created a uniform procedure for the enforcement of its substantive provisions, replacing the Fair Employment Commission, the Department of Equal Employment Opportunity, and the Human Relations Commission with one agency responsi-

ble for the investigation of all alleged civil rights violations, the Department of Human Rights. Davis & Murphey, *The Illinois Human Rights Act: Revision of Illinois Law Concerning Discrimination in Employment,* 69 Ill. B.J. 218 (1980).

Article 2 of the Act, which governs employment discrimination claims, is relevant to our discussion here. Under the Act, it is a civil rights violation "[f]or any *employer* to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 68, par. 2—102(A).) *"Employer"* under the Act includes: "[a]ny person employing 15 or more employees within Illinois during 20 or more calendar weeks within the calendar year of or preceding the alleged [civil rights] violation." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(1)(a).) As a corollary, *"[e]mployee"* under the Act does not include "[i]ndividuals employed by persons who are not 'employers' as defined by [the] Act." (Emphasis added.) (Ill. Rev. Stat. 1991, ch. 68, par. 2—101(A)(2)(b).) Finally, section 8—111(C) of the Act provides: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in [the] Act." Ill. Rev. Stat. 1991, ch. 68, par. 8—111(C).

## ANALYSIS

We begin our analysis with a statement of the applicable standard of review. On appeal from a dismissal for failure to state a cause of action, the reviewing court's sole task is to determine whether the allegations in the complaint are sufficient to set forth a cause of action for which relief may be granted. *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.

The parties agree that where the Act provides coverage, it is the exclusive remedy for employment discrimination. (*Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7.) Therefore, a covered employee may not bring a private cause of action to recover damages for a violation of his rights under article I, section 17. (See *Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, 960-61 (and the cases cited therein).) Because defendants here employed fewer than 15 employees, there is no contention that plaintiff's gender discrimination claim is cognizable under the Act. The issue here is whether article I, section 17, of the constitution will support a direct cause of action for a gender discrimination claim for those persons "not covered" under the Act. Subordinate to that issue is whether "discharge" is included within the meaning of section 17's "hiring and promotion practices."

It is plaintiff's contention that she is a person "not covered" under the Act, and, therefore, she has a direct cause of action under section 17. She offers the following analysis in support of her contention. The Act defines a "civil rights violation" as prohibited conduct by an "employer." Because defendants employed fewer than 15 persons, they are not, by the Act's definition, "employers," and their alleged discriminatory conduct does not constitute a "civil rights violation." Therefore, the Act does not apply. Plaintiff maintains that where the Act does not apply, a complainant may seek redress for a violation of any common law and constitutional rights directly in the courts.

We reject plaintiff's analysis. Whether a plaintiff may seek redress for employment discrimination directly under section 17 of the constitution presents, simply, a question of statutory construction. The dispositive issue is whether the legislature has exempted small employers from discrimination claims.

As we stated, the Act is the implementing legislation for section 17. (See Ill. Rev. Stat. 1991, ch. 68, par. 1—102(F).) Therefore, in our analysis, we must insure that any construction of the Act is in harmony with the letter and spirit of section 17. (See *Farwell v. Cohen* (1891), 138 Ill. 216, 257 (Magruder, C.J., dissenting).) To the extent necessary, we also construe section 17. Further, because section 17 provides the foundation for the Act, we begin our analysis there.

Generally, the rules of statutory construction are applicable to the construction of a constitutional provision. (*People ex rel. Chicago Bar Association v. State Board of Elections* (1990), 136 Ill. 2d 513, 526, citing *Coalition for Political Honesty v. State Board of Elections* (1976), 65 Ill. 2d 453, 464.) As with statutory construction, this court must construe a constitutional provision so as to effectuate the intent of the drafters. (*People v. Turner* (1964), 31 Ill. 2d 197, 199.) The best indication of the intent of the drafters of a constitutional provision is the language which they voted to adopt. (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 200.) And so it is with statutory construction. (See *In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) Where the statutory language is clear and unambiguous, it will be given effect without resort to other aids for construction. (*People ex rel. Baker v. Cowlin* (1992), 154 Ill. 2d 193, 197.) As for construing the constitution, while the " 'true inquiry concerns the understanding of the meaning of its provisions by the voters who adopted it, still the practice of consulting the debates of the members of the convention which framed the constitution has long been indulged in by courts in determining the meaning of provisions which are thought to be doubtful.' " *Board of Education, School District No. 142 v. Bakalis* (1973), 54 Ill. 2d 448, 461-62, quoting *People ex rel. Keenan v. McGuane* (1958), 13 Ill. 2d 520, 527.

There is no question that the drafters of section 17 granted the legislature authority to enact "reasonable exemptions" from the guarantees provided by section 17. The committee made it clear, however, that any legislative exemption must be reasonable and could not undermine the substance of the right to freedom from discrimination. (Gertz, *The Unrealized Expectations of Article I, Section 17*, 11 J. Marshall J. of Prac. & Proc. 283, 292 (1978).) Delegate Lewis Wilson, a member of the Bill of Rights Committee, explained as follows:

"We felt that the legislature should be empowered to provide for reasonable exemptions here where the balancing would be the other way around, if you please, and where in these situations we felt that the greater value lies in a freedom of choice on the part of the employer or, for example, on the part of a person furnishing the housing.

Now, let me give you an idea of some of these possible exemptions which we feel are reasonable and which the legislature would be empowered to enact. \*\*\* For example, the right of religious organizations to employ or provide housing for members of their own faith only. \*\*\* *Another example of a reasonable exemption would be that relating to small employers—employers, that is, of small numbers of employees.* Just what this number would be, I don't know, of course; but *in all these areas it was the committee's feeling that the relationship between landlord and tenant or between employer and employee was of such an intimate and personal nature that the greater value there lies in leaving a freedom of choice to the landlord or to the employer, as the case might be.* Hence, we have provided that the legislature may enact these exemptions. It's not required to do so, but it has the—has the power under the clause to do so." (Emphasis added.) 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1592-93.

In his prefatory remarks, Delegate Wilson noted the committee's recognition that the fashioning of a bill of rights is a job of balancing and trying to evaluate competing interests. "Sometimes these are the interests

of one private citizen versus the interests of another private citizen." Delegate Wilson stated that, therefore, the committee felt that the legislature should be empowered to make reasonable exemptions. 3 Record of Proceedings, Sixth Illinois Constitutional Convention, 1592.

The express grant of authority to create reasonable exemptions, as well as the section 17 drafters' supporting rationale, clearly indicate a recognition and acceptance that section 17 guarantees could be subject to limitation. Therefore, we reject any suggestion that the constitutional drafters did not intend that employees of small employers might possibly be left without a remedy for a violation of section 17 guarantees. Had the drafters intended otherwise, they simply would not have provided for "reasonable exemptions." That said, we turn our attention to whether the legislature made such "reasonable exemptions."

The Act does not expressly state that small employers are exempted from its coverage. We note, incidentally, that section 2—104 of the Act, which is titled "Exemptions," expressly provides that certain *conduct*, such as giving preferential treatment to veterans, giving professionally developed ability tests, or establishing an educational requirement, is not prohibited under the Act. (Ill. Rev. Stat. 1991, ch. 68, pars. 2—104(A)(2), (A)(4), (A)(6).) However, no such express provision is made for *classes* of employers which could permissibly be exempted. Instead, the Act simply defines "employers" as those persons employing 15 or more people and, further, defines a "civil rights violation" as discriminatory conduct by an "employer." Consistent with the constitutional grant of authority to exempt certain classes of employers, and because the Act is the implementing legislation for section 17, however, we read the Act as implicitly exempting, by definition, small employers from section 17 claims.

The court in *Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, however, held that while the legislature may have had the power to limit or eliminate claims for gender discrimination against small employers, the fact remains that it did not do so. "Nothing in the Illincis Human Rights Act suggests that small employers should be left to discriminate as they wish." *Ritzheimer*, 173 Ill. App. 3d at 962-63.

The court in *Ritzheimer* apparently viewed any non-express exemption as constituting no exemption. We disagree. We know of no rule of construction, and plaintiff points to none, which recognizes only express exemptions. On the contrary, the enumeration of one thing in a statute implies the exclusion of all others. (See *Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 442.) Although no statute may be construed more broadly than its express language and reasonable implications (*Insull v. New York Word-Telegram Corp.* (1975), 172 F. Supp. 615, 628), that which is implied in a statute is as much a part of it as that which is expressed (*United States v. Jones* (1975), 204 F.2d 745, 754).

Implicit in the Act's definition of those employers who are subject to discrimination claims is that employers of fewer than 15 employees are exempt from such claims. Therefore, contrary to plaintiff's contention, she is "covered" under the Act.

We recognize that the rule *expressio unius est exclusio alterius* is not a rule of law, but a rule of statutory construction which may be overcome by a strong indication of contrary legislative intent. (*Sulser v. Country Mutual Insurance Co.* (1992), 147 Ill. 2d 548.) However, we believe that our interpretation of the Act is wholly supported by and consistent with the legislative intent.

As previously stated, the Act expressly provides that

it was implemented to secure the rights "established by section 17 of the constitution." The Act's express and unqualified purpose to implement section 17 evidences a legislative intent to give effect to the letter and spirit of section 17. Obviously, in enacting the Act, the legislature was cognizant of those exemptions deemed reasonable by the constitution's drafters, as well as their reasons for permitting such exemptions. That being the case, we find it unlikely that the legislature ignored the drafters' sentiments concerning the "intimate and personal nature" of small employer-employee relationships. Clearly, the implementing legislation was intended to abrogate any right of action other than as provided for in the Act. See Davis & Murphey, *The Illinois Human Rights Act: Revision of Illinois Law Concerning Discrimination in Employment*, 69 Ill. B.J. 218 n.6 (1980); see also Ill. Rev. Stat. 1991, ch. 68, par. 8—111(C).

The legislative debates to the Act, as recited in *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 546, provide an additional measure of support for our conclusion. There the court recited the comments of then State Representative Braun as follows:

> "[Senate Bill 1377] repeals the existing civil rights authority and replaces that authority but abandons certain existing rights regarding testing standards, discrimination by contractors, protections extended to the handicapped, *private right of action,* delay by respondents, damages by willful discrimination. It creates a new exemption for discrimination by private clubs, religious corporations, and others." (Emphasis added.) 81st Ill. Gen. Assem., House Debates, November 8, 1979, at 97, quoted in *Dilley*, 129 Ill. App. 3d at 546.

Although small employers are not mentioned in the comments as one of the exempted classes, it is significant that religious corporations are noted as exempted. Religious corporations, along with small employers, are a class of employers which the section 17 drafters included as permissible exemptees. As with small

employers, the Act does not expressly exempt religious corporations but, instead, includes them in its definition of who is not an employer. (See Ill. Rev. Stat. 1991, ch. 68, par. 2—101(B)(2).) Nevertheless, we view, as did apparently Representative Braun, that the Act exempts religious corporations from section 17 claims. Additionally, it is noteworthy that the comments mention, without qualification, the abandonment of a private right of action.

We find additional support for our conclusion in the application of another of the rules of statutory construction. The rule, as generally stated, provides that in construing statutes, courts presume that the General Assembly, in passing legislation, did not intend absurdity, inconvenience or injustice. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363.) We have considered the likely results of a construction of the Act which would permit a direct action under section 17. In that regard, we note that the Act provides that its purpose is to protect the citizens of this State against unfounded charges of unlawful discrimination. (Ill. Rev. Stat. 1991, ch. 68, par. 1—102(H).) Under the Act, once a claim of discrimination is filed with the Department of Human Rights, the Department is mandated to conduct an investigation to determine the meritoriousness of a claim prior to filing a complaint with the Human Rights Commission. (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102.) It would be unjust for the legislature to devise a mechanism designed to shield large employers from the burdens and costs of defending against a private lawsuit in which it may ultimately be determined that the claims are unfounded and yet leave small employers, who can least afford it, to fend for themselves. Further, the remedies provided under the Act are extensive, including actual damages, back pay, the provision of fringe benefits which may have been

denied and "make whole relief." (See Ill. Rev. Stat. 1991, ch. 68, pars. 8A—104(B), (C), (J).) Noticeably absent is any provision for punitive damages. Again, it seems an unjust result that the legislature would limit the nature of the damages available against large employers and leave small employers at risk to pay potentially bankrupting sums, including punitive damages. Finally, under the Act, a charge that a civil rights violation allegedly has been committed must be filed within 180 days. (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102.) This requirement has been held to be jurisdictional. (See *Faulkner-King v. Department of Human Rights* (1992), 225 Ill. App. 3d 784.) Direct claims against small employers would not be subject to the limitations of a 180-day filing requirement. (See Ill. Rev. Stat. 1991, ch. 110, par. 13—205 (civil actions not otherwise provided for shall be commenced within five years after cause of action accrued).) As is apparent, any construction of the Act which would permit a private cause of action under section 17 creates an obvious injustice to small employers. We therefore believe that it was the intent of the legislature to exempt small employers from discrimination claims.

Plaintiff would no doubt argue that a construction of the Act which leaves employees of small employers without a remedy for employment discrimination is, likewise, unjust. Such a construction comports, however, with the section 17 drafters' attempt to balance the competing interests in accommodating the intimate relationships and personal choices involved in the small employer-employee relationship against preventing discrimination. Notably, in its report on the various antidiscrimination proposals, the Bill of Rights Committee stated:

"[F]ew would approve an anti-discrimination provision that absolutely prohibited the kind of indirect discrimination involved in providing housing exclusively to the aged

members of certain religious or ethnic organizations, or women's groups. Persons might also be permitted some discrimination in employment or rental relationships that are on so small a scale and under circumstances so intimate that they are of a highly personal nature." 6 Record of Proceedings, Sixth Illinois Constitutional Convention 68-69.

In support of her argument that direct action was intended by the section 17 drafters, plaintiff invites our consideration of that portion of the debates concerning the self-executing clause of section 17:

"MR. S. JOHNSON: Delegate Wilson, I'd like to ask you two or three questions about this self-enacting provision. Exactly how would that work? Supposing—supposing I had a grievance against someone and no remedy was found in statute law; how would I file a charge and what would happen after that?

MR. WILSON: Well, if we are right—and I think we are right about this, Mr. Johnson—that this provision does create a right *and the legislature has not set up any procedure*, the courts are not powerless to find a remedy and to establish a remedy." (Emphasis added.) (3 Record of Proceedings, Sixth Illinois Constitutional Convention 1597.)

Delegate Wilson additionally commented:

"This is what courts are doing all the time. You know there is no statutory definition, for example, of due process of law. The courts are—decide what is due process of law, and they decide this; and this has been the genius, of course of the English common law. They decide this on a case-by-case basis *** whether or not there has been discrimination within the purview of this *** constitutional provision." 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1597.

Plaintiff's argument that the drafters intended that a plaintiff be able to pursue a remedy directly under section 17 is not wholly incorrect. The self-executing provision is clearly an attempt to defeat any claim of unenforceability of section 17 rights. However, we believe that the provision is operational *only* in the

absence of implementing legislation—where "the legislature has not set up any procedure."

The committee comments to section 17 suggest that, in the absence of implementing legislation, there is an obvious question as to how the courts will fashion remedies for violations of section 17. (Ill. Ann. Stat., 1970 Const., art. I, § 17, Constitutional Commentary, at 673 (Smith-Hurd 1971).) Further, Delegate Gertz, chairman of the Bill of Rights committee, citing the constitutional commentary, offers that the self-executing provision was included to avoid the effects of *Dorsey v. Stuyvesant Town Corp.* (1949), 209 N.Y. 512 (holding that a general civil rights provision in New York's constitution did not outlaw racial discrimination in housing in the absence of legislative action). (Gertz, *The Unrealized Expectations of Article I, Section 17*, 11 J. Marshall J. of Prac. & Proc. 283, 294 n.57 (1978).) Finally, we find significant Delegate Wilson's response to a question concerning the General Assembly's role in controlling excessive penalties. Delegate Wilson stated: "The provision gives the General Assembly the right to establish exemptions, the general nature of which I referred to in my remarks, and also *to establish procedure and remedies.*" (Emphasis added.) 3 Record of Proceedings, Sixth Illinois Constitutional Convention 1597.

In our view, the self-executing provision simply makes clear that inaction by the legislature, or repeal of any implementing legislation, would not serve to defeat the substantive rights guaranteed by section 17. However, the self-executing provision does not operate where the General Assembly has acted. (See *Mein*, 109 Ill. 2d 1.) Incidentally, in the absence of legislative action, it is unclear how the section 17 drafters' public policy concerns with respect to the intimacy and personal choice involved in the small employer-employee relationship would have been actualized. Under our

construction of the Act, however, those concerns are accommodated.

For these reasons, we conclude that the Act implicitly exempts small employers from a section 17 claim. By such exemption, employees of small employers are "covered" under the Act. Because the Act is the exclusive remedy for employment discrimination claims (Ill. Rev. Stat. 1991, ch. 68, par. 8—111(C)), employees of small employers may not bring a direct action under section 17. In light of our holding today, we expressly reject *Ritzheimer*, 173 Ill. App. 3d 953.

Our determination that a direct action under section 17 is precluded renders resolution of the subordinate issue, whether discharge is included in the phrase "hiring and promotion practices," unnecessary.

## CONCLUSION

The Human Rights Act provides a broad array of antidiscrimination protections. Clearly, the Act was designed to afford greater protections and to alleviate those gaps in protection which existed under the former employment discrimination statute, the Fair Employment Practices Act. The current Act provides a comprehensive and systematic mechanism for the investigation and disposition of discrimination claims. As properly construed, however, the Human Rights Act precludes a remedy for employees of small employers for employment discrimination. This construction is, nonetheless, supported by the constitutional debates. And, in our review, we are constrained to do no more than interpret the law. Any attempt to broaden or narrow the scope of the Act is necessarily a matter for the legislature.

Plaintiff has not stated a cause of action upon which relief may be granted. For all of the foregoing reasons, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE HARRISON, dissenting:

For the reasons set forth in *Ritzheimer v. Insurance Counselors, Inc.* (1988), 173 Ill. App. 3d 953, I believe that an employee fired from her job because of gender discrimination is entitled to bring an action directly under article I, section 17, of the 1970 Illinois Constitution (Ill. Const. 1970, art. I, § 17) where, as here, the employer has fewer than 15 employees. Plaintiff's complaint should therefore have survived defendants' motion to dismiss. Accordingly, I dissent.