NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

                 Docket No. 79097--Agenda 8--March 1996.

        TIMOTHY J. SCHIRMER, Appellee, v. WILLIAM F. BEAR et al.,

                               Appellants.

                     Opinion filed October 18, 1996.

                                    

     JUSTICE McMORROW delivered the opinion of the court:

     The question presented in this appeal is whether, under

section 12.55 of the Illinois Business Corporations Act of 1983

(the Act) (805 ILCS 5/12.55 (West 1992)), a plaintiff shareholder

in a close corporation must prove grounds which would justify

dissolving the corporation as a prerequisite to receiving the

statutory remedy of having the corporation purchase his or her

shares. The appellate court concluded that a plaintiff does not

have to establish that dissolution is justified before a

corporation may be forced to buy a complaining shareholder's

corporate stock. 271 Ill. App. 3d 778. We allowed defendants'

petition for leave to appeal. 155 Ill. 2d R. 315. For the reasons

which follow, we affirm the judgment of the appellate court.

                                Background

     Defendant William R. Bear Agency, Inc. (the Agency), is an

independent insurance agency located in Freeport, Illinois. The

Agency was incorporated in 1979, at which time 1,000 shares of

common stock were issued. Of these 1,000 shares, 750 were retained

by Mr. William R. Bear, previously the Agency's sole owner, and his

wife, Mrs. Jean M. Bear. The remaining 250 shares were purchased by

Mr. and Mrs. Bear's son, defendant William F. Bear (William), who

was also an employee of the Agency.

     On May 1, 1982, the plaintiff, Timothy Schirmer, began working

for the Agency as an insurance broker. On that same date, two stock

purchase agreements were entered into. In the first, Mr. and Mrs.

Bear agreed to sell William 44 of their shares in the Agency and to

sell plaintiff 187 of their shares. In return for the 187 shares,

plaintiff made a $10,000 down payment and agreed to pay the

remaining balance of $66,670 in monthly installments at an interest

rate of 9.25% per annum. Plaintiff's total obligation for the

shares, including principal and interest, was approximately

$106,000. Also, under the first agreement, plaintiff received an

option to buy 53 additional shares of the Agency at $410 per share,

with further conditions of the sale to be decided at the time of

purchase.

     Under the terms of the second stock purchase agreement, the

Agency bought back all of Mr. and Mrs. Bear's remaining 519 shares

for $212,790. This amount was to be paid in monthly installments of

$3,450.65, which reflected a 9.25% annual interest rate. The

Agency's total obligation for the shares was approximately

$290,000. William and plaintiff guaranteed payment for the 519

shares both individually and jointly. Because of the two stock

purchase agreements, as of May 1, 1982, plaintiff and William

became the sole shareholders of the Agency. William owned 294

shares, representing 61.1% of the outstanding stock, and plaintiff

owned 187 shares, representing 38.9%.

     From May 1, 1982, until July 1990, plaintiff had a good

working relationship with William. During this time, plaintiff

earned an annual income from the Agency, plus annual bonuses for

increasing revenues by developing new accounts. The gross annual

commissions of the Agency, with plaintiff's help, increased from

$180,653 to $285,000. In addition, during this period, plaintiff

served as a corporate director of the Agency. William and defendant

Lawrence Peck, a retired accountant and friend of Mr. Bear, also

served as corporate directors.

     The final installment payments under both of the 1982 stock

purchase agreements were due at the beginning of July 1990. At a

meeting held on July 2, 1990, William and plaintiff presented the

final payments to Mr. and Mrs. Bear and, in return, received their

stock certificates. At the same meeting, William and plaintiff,

acting in their capacity as shareholders, elected the board of

directors for the Agency. As in the past, this board consisted of

William, plaintiff, and Lawrence Peck. The directors' term of

office was to be for one year. Also during the same meeting,

William and plaintiff agreed to extend the terms of the first stock

purchase agreement until such time as a new agreement between

William and plaintiff could be completed. In addition, the value of

the corporation, later contested at trial, was declared to be

$500,000.

     On July 18, 1990, plaintiff wrote to William expressing a

desire to exercise his option to purchase 53 additional shares of

the Agency pursuant to the terms of the first stock purchase

agreement. Plaintiff enclosed a proposed payment plan with his

letter which stated that payment amounts and payment dates were to

be left to the discretion of the buyer. Two days later, on July 20,

1990, William met with plaintiff and rejected the offer. At the

same time, William informed plaintiff that, for business reasons,

he had closed the books of the Agency, thereby forgoing any bonuses

or profit sharing for the year.

     On August 10, 1990, plaintiff wrote William a letter in which

he strongly protested William's decision to close the books of the

Agency and declared that doing so was not in the best interest of

the stockholders. Plaintiff further alleged that William had wasted

corporate assets. Plaintiff stated that he could not see himself

continuing with the Agency under current conditions and requested

that the Agency pay him $195,000 for his shares. This figure was

based on his percentage interest in the Agency and the $500,000

valuation established at the July 2, 1990, meeting. Plaintiff also

stated that once his shares were purchased, he would be willing to

either terminate his relationship with the Agency or continue on as

an employee with an annual salary equal to William's. The next day,

August 11, 1990, William wrote plaintiff a letter in which he

rejected plaintiff's proposals and advised plaintiff to have his

attorney contact William's attorney, John B. Whiton.

     On August 20, 1990, William sent plaintiff a letter notifying

him of an annual directors' meeting to be held on August 30, 1990.

The letter did not contain any notice of intent to hold a

shareholders' meeting, to amend the bylaws, or to reduce the size

of the board of directors.

     On August 27, 1990, Whiton, who also served as counsel for the

Agency, wrote to plaintiff, stating that plaintiff's letter of

August 10 was deemed a resignation effective no later than

September 15, 1990. Whiton also rejected plaintiff's asking price

for his stock and instead offered the price of $76,670. This figure

was derived from the first stock purchase agreement, which

permitted Mr. and Mrs. Bear to reacquire plaintiff's shares for the

principal price he paid if plaintiff resigned from the Agency or

was discharged for his conduct. Whiton's letter also noted that if

plaintiff refused to sell his stock, he faced the possibility of

remaining, for quite some time, a minority shareholder with no

input into how the Agency was run.

     On August 30, 1990, at a meeting of the board of directors at

which plaintiff was present, William moved to amend the Agency's

bylaws to reduce the number of directors from three to one. William

voted his 61.1% of the Agency's shares in favor of the motion and

plaintiff voted his 38.9% against. The motion passed. William then

nominated himself as sole director of the Agency and was elected,

again on the strength of his ownership of 61.1% of the Agency's

shares. As sole director, William appointed himself president and

treasurer of the Agency, and appointed his wife secretary. William

also removed plaintiff's name from all corporate accounts and set

plaintiff's termination date for September 15, 1990. After that

date, plaintiff received no further income, bonuses, or other

benefits from the Agency.

     On December 7, 1990, plaintiff filed the instant lawsuit in

the circuit court of Stephenson County, alleging that the

defendants wasted corporate assets and acted in an illegal,

oppressive, or fraudulent manner. No allegations were made

regarding corporate deadlock. At trial, plaintiff argued that he

had been exploited by William. Plaintiff maintained that William

had used him to finance the stock purchase agreements and then,

once the payments required under the agreements were completed,

illegally removed him from the Agency. Plaintiff prayed for

dissolution of the corporation or, in the alternative, an order

directing the Agency to buy plaintiff's shares.

     After trial, the court concluded that plaintiff's removal as

corporate director and officer at the August 30, 1990, meeting was

"obviously illegal, but the record is devoid of any evidence that

plaintiff was harmed thereby." The court noted that the decision to

dissolve a corporation is discretionary, even when a finding of

illegal conduct has been made. 805 ILCS 5/12.50 (West 1992) ("A

Circuit Court MAY dissolve a corporation: ***" (emphasis added)).

The court declined to exercise its discretion, concluding that

plaintiff had failed to prove that defendants engaged in conduct

which justified dissolving the Agency. However, the court held that

plaintiff could recover the fair value of his shares pursuant to

section 12.55 (805 ILCS 5/12.55 (West 1992)). The court then

ordered a hearing to be held to assess the value of plaintiff's

stock. Subsequently, upon defendant's motion to reconsider, the

court reversed itself, based solely upon the first district of the

appellate court's ruling in Coduti v. Hellwig, 127 Ill. App. 3d 279

(1st Dist. 1984). The Coduti court held that the Act's alternative

remedy of a purchase of plaintiff's shares could not be awarded

unless the plaintiff proved all of the elements necessary to

warrant dissolving the corporation. Coduti, 127 Ill. App. 3d at

294.

     On appeal, the second district of the appellate court

essentially agreed with the circuit court's original ruling and

findings. The appellate court acknowledged, but declined to follow,

the interpretation of section 12.55 that was adopted in Coduti.

Instead, the appellate court held that a plaintiff does not have to

establish that dissolution is justified before the alternative

remedy of a forced purchase of shares may be granted under section

12.55. The appellate court reversed the circuit court's decision

refusing to order the Agency to purchase plaintiff's shares and

remanded the cause for a hearing to determine the fair value of

plaintiff's shares. This appeal followed.

                                 Analysis

     The provision at issue in this appeal, section 12.55 of the

Act, provides in pertinent part:

               "(a) In either an action for dissolution pursuant to

          Section 12.50 or in an action which alleges the grounds

          for dissolution set forth in Section 12.50 but which does

          not seek dissolution, the Circuit Court, in lieu of

          dismissing the action or ordering dissolution, may retain

          jurisdiction and:

                                   * * *

               (3) In an action by a shareholder, order a purchase

          of the complaining shareholder's shares as provided in

          subsections (f) and (g) below.

                                   * * *

               (f) The court, at any time during the pendency of

          the action and upon the motion of the complaining

          shareholder, may order the corporation to purchase the

          shares of the complaining shareholder at a fair price

          determined by the court ***.

               (g) Either the corporation or any shareholder or

          group of shareholders may, any time after filing of an

          action for dissolution pursuant to subsection (b) of

          Section 12.50, petition the court to purchase the shares

          of a complaining shareholder ***." 805 ILCS 5/12.55 (West

          1992).

     Section 12.50 of the Act provides in pertinent part:

               "§12.50. Grounds for judicial dissolution. A Circuit

          Court may dissolve a corporation:

               ***

               (b) In an action by a shareholder, if it is

          established that:

               ***

               (2) The directors or those in control of the

          corporation have acted, are acting, or will act in a

          manner that is illegal, oppressive or fraudulent; or

               (3) The corporate assets are being misapplied or

          wasted." 805 ILCS 5/12.50(b) (West 1992).

     Plaintiff argues that section 12.55 does not require, as a

condition precedent to relief, proof of conduct which would entitle

him to corporate dissolution under section 12.50. Plaintiff notes

that by its express terms, section 12.55 permits alternative

remedies not only in actions brought solely under section 12.50,

but also in actions "which allege[ ] the grounds for dissolution

set forth in Section 12.50 but which [do] not seek dissolution."

805 ILCS 5/12.55(a) (West 1992). In addition, plaintiff notes that

the circuit court is given the discretion to order alternative

remedies "in lieu of dismissing the action or ordering dissolution"

(805 ILCS 5/12.55(a) (West 1992)) and, further, that under

subsection (f) the court may order a forced purchase of shares "at

any time during the pendency of the action" (805 ILCS 5/12.55(f)

(West 1992)). Based on this language, plaintiff maintains that the

filing of "an action which alleges the grounds for dissolution set

forth in Section 12.50" (805 ILCS 5/12.55(a) (West 1992)) is

essentially a threshold requirement for obtaining the alternative

remedies available under section 12.55. Once this requirement is

met, the court need only be apprised of the relevant facts.

Thereafter, if equity requires the awarding of an alternative

remedy, the court is permitted to grant one. Continuing, plaintiff

argues that because he filed an action which alleged grounds for

dissolution under section 12.50, i.e., waste, illegality and

oppression, and because the equities were in his favor, the trial

judge properly acted within his discretion when he initially

awarded the buyout of plaintiff's shares.

     In contrast, defendants argue that the only way to effectuate

fair and uniform results under section 12.55 is to require a

plaintiff to prove all of the elements necessary to justify

dissolving the corporation under section 12.50. Defendants point

out that the decision to grant dissolution under section 12.50

remains discretionary even when it has been established that the

defendants engaged in illegal or oppressive acts, or wasted

corporate assets. 805 ILCS 5/12.50 (West 1992) ("A Circuit Court

may dissolve a corporation: ***"). Thus, defendants maintain that

in order to prove all the elements for dissolution in this case,

plaintiff must establish both that defendants engaged in the

alleged misconduct and that the conduct was severe enough to

warrant judicial dissolution. Because the trial court concluded

that dissolution was not warranted in the case at bar, despite the

finding of illegal conduct, defendants argue that the alternative

remedy of a buyout of plaintiff's shares should not be available.

     Defendants also note that plaintiff's construction of section

12.55 does not provide an explicitly defined basis for awarding

relief. Defendants express concern that if this court approves

plaintiff's analysis of the statute, trial courts will have

"unfettered discretion to order the corporation to purchase the

minority shareholder's shares." Defendants urge this court to

follow the interpretation of section 12.55 adopted by the Coduti

court, which held that the provision "contemplates only an

alternative remedy, rather than a distinct action. Consequently,

the right to that remedy depends upon proof of ALL OF THE ELEMENTS

which would have entitled the party to a judicial dissolution ***."

(Emphasis added.) Coduti, 127 Ill. App. 3d at 294.

     We agree with plaintiff that the plain language of section

12.55 provides a basis for relief independent of proof of grounds

for dissolution under section 12.50. The statute contemplates broad

discretion in the trial court in deciding to award a forced

purchase of shares, and unambiguously "provides for a separate and

distinct cause of action from Section 12.50." Kimmel v. Wirtz, 793

F. Supp. 818, 820 (N.D. Ill. 1992). Therefore, plaintiff's failure

to prove grounds entitling him to judicial dissolution does not

foreclose the availability of the alternative remedy of a forced

purchase of his shares.

     However, we disagree with the remainder of plaintiff's

interpretation of section 12.55. Plaintiff's contention is that

section 12.55 gives the circuit courts the discretionary authority

to order the alternative remedy of a forced purchase of shares

without first making any findings of corporate waste, illegality or

other clearly specified wrongdoing. Defendants correctly point out

that plaintiff's interpretation of section 12.55 leaves the

elements of proof required under the statute completely undefined.

Thus, under plaintiff's interpretation, the circuit courts would be

left with no guidelines for determining what type of behavior

warrants awarding the forced purchase of shares, and reviewing

courts would have no way of determining when, if ever, a circuit

court had abused its discretion in awarding that remedy. Similarly,

under plaintiff's analysis of the statute, defendant corporations

would have no notice respecting what actions taken by the

corporation would justify ordering the forced purchase of a

shareholder's stock. We presume that in enacting section 12.55, the

legislature did not intend to produce an absurd, inconvenient or

unjust result. Baker v. Miller, 159 Ill. 2d 249, 262 (1994).

Accordingly, because plaintiff's proposed construction of section

12.55 poses unavoidable problems of application and raises

substantial questions of fundamental fairness, that construction

must be rejected.

     We must also, however, reject defendants' explanation of what

proof is required under section 12.55. Defendants argue that all of

the elements which would entitle a plaintiff to judicial

dissolution must be proved in order for an alternative remedy under

section 12.55 to be available. In other words, defendants argue, a

plaintiff must establish both that the defendants engaged in the

alleged misconduct and that the misconduct was so wrongful as to

justify dissolving the corporation. This interpretation of section

12.55 would provide clarity and guidance for the courts, but it is

also illogical: plaintiffs would be required to prove that a

defendant's conduct was sufficiently egregious to warrant judicial

dissolution in order to receive the far less drastic remedy of a

buyout.

     Moreover, defendants' interpretation of section 12.55 is

contrary to the legislative intent behind that provision. Judicial

dissolution is an extreme remedy which courts are properly

reluctant to order. See Coduti, 127 Ill. App. 3d at 283; Central

Standard Life Insurance Co. v. Davis, 10 Ill. 2d 566, 576 (1957).

Prior to the enactment of section 12.55, minority shareholders

seeking redress were left without a remedy in those instances where

the defendant's conduct, even though wrongful, did not justify

dissolving the corporation. Section 12.55 was specifically enacted

to correct this problem by increasing the remedies available to

minority shareholders and by enlarging the discretionary authority

of the circuit courts to award relief in situations which do not

warrant dissolution but which do warrant some other, less severe

remedy. See, e.g., Official Comments of the Advisory Committee to

the Secretary of State on the Illinois Business Corporation Act of

1983, Section 12.55 reprinted in 2 Corporation Law Committee,

Chicago Bar Association, The Illinois Business Corporation Act

Annotated 429 (3d ed. Supp. 1984) ("The Advisory Committee

perceived a need for [alternative] remedies less Draconian than

dissolution, whenever anyone sought dissolution of a corporation").

Requiring plaintiffs to prove not only that the defendants engaged

in misconduct but also that the misconduct was so extreme as to

justify dissolution of the corporation defeats this legislative

intent by severely curtailing the discretion invested in the

circuit courts to order the alternative remedies. Therefore, we

decline to adopt defendants' proposed construction of section

12.55.

     We hold that when a plaintiff seeks relief under section 12.55

by filing an action which alleges illegal, oppressive or fraudulent

conduct (805 ILCS 5/12.50(b)(2) (West 1992)), or the misapplication

or wasting of corporate assets (805 ILCS 5/12.50(b)(3) (West

1992)), the plaintiff must establish that the defendant engaged in

the alleged statutory misconduct. However, the plaintiff need not

prove that defendant's wrongdoing was so severe that it would

justify dissolving the corporation. Once the predicate misconduct

is established, the court may, in its discretion, determine which,

if any, remedy is equitable and appropriate for plaintiff under the

statute. We believe this construction of section 12.55 fully

effectuates the legislative intent to increase shareholder remedies

while, at the same time, providing adequate guidance for the

courts. We further note that this construction comports with the

current statutory scheme regulating shareholder remedies for

nonpublic corporations. See 805 ILCS 5/12.56 (West Supp. 1995).

     In the instant case, the trial judge found that the removal of

plaintiff as a corporate officer and director at the August 30,

1990, meeting was "obviously illegal" and specifically noted that

the notice for the meeting "failed to comply with the law." In

addition, while the trial judge did not further identify

defendants' illegal acts, the record supports plaintiff's

contentions that the removal of plaintiff was done in violation of

section 10.20 of the Act, which requires "the affirmative vote of

the holders of at least two-thirds of the outstanding shares

entitled to vote" to amend the bylaws (see 805 ILCS 5/10.20(c)

(West 1992)), and section 8.10, which prohibits the shortening of

an incumbent director's term of office (see 805 ILCS 5/8.10(d)

(West 1992)). Here, William was able to amend the Agency's bylaws

with only 61.1% of the shares and plaintiff's one-year term as

corporate director was ended less than two months after it began.

     Defendants do not contest the trial judge's finding of

illegality but instead emphasize the judge's additional statement

that plaintiff was not damaged by his illegal removal as corporate

director and officer. Defendants conclude that even under the

construction of section 12.55 adopted herein, and even with the

finding of illegality by the trial judge, the buyout should not

have been ordered because the plaintiff suffered no injury.

     It is unclear from the record exactly what the trial judge

meant by his statement that the plaintiff was not damaged by the

events at the August 30, 1990, meeting. The statement was made in

the context of concluding that plaintiff was not entitled to

dissolution of the corporation under section 12.50. Thus, the

statement may simply have meant that plaintiff had not been

sufficiently damaged to warrant the drastic remedy of dissolution.

Clearly, the trial judge did not believe that plaintiff was not

damaged at all; otherwise he would not have ordered the buyout.

Indeed, the judge expressly noted during comments made at the

conclusion of trial that any award which he entered would "reflect

what, if any, injury [had been] inflicted."

     Regardless of the precise meaning of the statement, the facts

indicate that plaintiff was forced out of any participation in the

Agency by the actions of an illegally elected sole director. The

parties agree that the decision to order remedies under section

12.55 is left to the sound discretion of the trial judge. We

conclude, based on the record before us, that the trial judge did

not exceed the scope of his discretionary authority when he

initially ordered the Agency to purchase plaintiff's shares. The

judge's subsequent reversal of that decision was based solely on

the Coduti court's interpretation of section 12.55, which today has

been overruled. Therefore, the trial judge's ultimate decision not

to order the Agency to purchase plaintiff's shares must be

reversed.

     For the foregoing reasons, the appellate court's judgment

reinstating the trial court's initial order and remanding the cause

for a hearing to determine the fair value of plaintiff's shares is

affirmed.

Affirmed.

                                                                         

     JUSTICE HARRISON, specially concurring:

     I agree with the result reached by the majority, but write

separately because I disagree with my colleagues' construction of

section 12.55 of the Illinois Business Corporation Act of 1983 (805

ILCS 5/12.55 (West 1992)). 

     Under the plain language of section 12.55, the court may order

the corporation to purchase the shares of a complaining shareholder

at any time during the pendency of a dissolution action if the

complaining shareholder has moved for such relief. As the appellate

court correctly held, the statute does not require grounds for

dissolution to be proven before this alternative remedy may be

applied. 271 Ill. App. 3d at 787. The remedy is available whenever

the appropriate allegations have been made to state a claim under

section 12.50 of the Act (805 ILCS 5/12.50 (West 1992)) and the

shareholder asks to be bought out, as was the case here. There is

no basis in the law for requiring a petitioning shareholder to do

anything more.