5 August 1999

NO. 4-98-0894

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

BUSINESS SERVICE BUREAU, INC., ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Champaign Coun­ty

RODNEY MARTIN, ) No. 97SC804

Defendant-Appellant. )

) Honorable

) Donald R. Parkinson,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

In March 1997, the trial court entered a judgment for plain­tiff, Business Service Bureau, Inc. (Bureau), against de­fen­

dant, Rodney Mar­tin, for un­paid medical ex­pens­es plus costs and interest.  Sup­ple­men­ta­ry pro­ceed­ings to dis­cov­er as­sets fol­lowed, and in September 1998, the trial court or­dered de­fen­dant, who (according to his affidavit) is unem­ployed and has no as­sets, to search for em­ploy­ment.  After a hearing in November 1998, the trial court denied a mo­tion to va­cate the job search order and entered a Rule 304(a) finding of no just reason to delay enforce­

ment or an ap­peal.  155 Ill. 2d R. 304(a).  

Mar­tin ap­peals, argu­ing that the trial court erred in its appli­ca­tion of sec­tion 2-1402 of the Code of Civil Pro­ce­dure (Code) (735 ILCS 5/2-1402 (West 1996)) because (1) the order forc­es him to spend his wife's exempt in­come to search for a job, vio­lating section 2-1402(j) of the Code (735 ILCS 5/2-1402(j) (West 1996)); (2) sec­tion 2-1402 deals with dis­cov­ery of as­sets, not cre­ation of as­sets; (3) the job search order is inap­pro­pri­ate be­cause sec­tion 2-1402(c) provides for or­ders in­tended to compel collec­tion of discovered assets, not asset cre­ation; and (4) the job search order is un­con­sti­tu­tional under the thir­teenth amend­

ment (U.S. Const., amend. XIII), as well as a vio­la­tion of due pro­cess (U.S. Con­st, amend. XIV; Ill. Const. 1970, art. I, §2) and the right to pri­vacy (U.S. Con­st., amend­. IV; Ill. Con­st. 1970, art. I, §6).  We vacate the job search order and re­mand.

In March 1997, a civil judgment was entered against  defendant for $4,483.73 plus costs and in­ter­est.  In March 1998, the cir­cuit clerk issued a cita­tion to dis­cov­er as­sets.  Also in March 1998, the trial court denied Martin's mo­tion to quash the cita­tion and continued the hear­ing until April 1998.  

The docket entry for the April 1998 hear­ing provides in pertinent part:

     "The Defendant is sworn; evidence is heard.  The Defendant is ordered to pro­vide a doctor's letter to counsel indicating the length and/or whether permanent or tempo­rary.  Representation he has pending disabil­ity claim.  Case continued for further review to 6-9-98 ***."

According to the docket entry for the June 1998 pro­

ceed­ing, de­fen­dant in­formed the court that he was denied dis­abil­

ity status and was ap­pealing his claim.  Defendant also repre­

sented that he was seek­ing em­ploy­ment through tem­po­rary em­ploy­

ment ser­vic­es.  Again, the cita­tion hear­ing was con­tinued until Sep­tember 1998.  

The docket entry for the September 1998 hear­ing states the following:  

"Sherman Brown appears on behalf of the Plaintiff.  Defendant appears with Mr. Drake and Mr. Bell.  Consent to representation by senior law student on file.  Over the objec­

tion of counsel, Defendant ordered to file job affidavits biweekly with counsel's of­

fice.  Cause continued for further review to 10-15-98, at 10:30 a.m., in Courtroom L."

In October 1998, counsel for defendant filed a mo­tion to va­cate the job search or­der, supported by a memorandum of law and defendant's affida­vit.  By affidavit defendant stat­ed the following: (1) at the September hearing, he testified to the truth of the enumer­ated facts, including that he is unemployed and his appeal on his disability status is pending; (2) at the con­clusion of the September hearing, the court ordered him to re­

turn in Octo­ber "with a list of at least [10] places for every week where [he] had sought employment since the status hearing";  (3) his wife re­ceives ap­proxi­mate­ly $478 per month in so­cial security bene­fits and $400 per month from employment; (4) his wife suf­fers from epi­lep­sy and mild mental re­tar­da­tion, and is prone to sei­zures, especially when under stress; (5) she has re­

cent­ly been the vic­tim of a crime and is enduring the pros­ecu­tion of the perpe­tra­tor; (6) for these rea­sons he has been unable to seek and secure em­ploy­ment as he must remain home to assist his wife; and (7) he has no assets or non­exempt in­come and no desire to secure em­ploy­ment.

After a hear­ing in No­vem­ber 1998, the cir­cuit court de­

nied Martin's mo­tion to va­cate, stating in part:

"The fact that a job search order is not spe­cifically mentioned in the statute [sec­

tion 2-1402] is of no import whatsoever.  Judg­es are free and have been[,] and that's con­sis­tent with our authority[,] to fashion any orders that they believe are helpful and beneficial.  By no means [has] the legisla­

ture in their nine vol­umes plus two for the updates don't think they've covered every­

thing.  I'm sure it'll be up to ten vol­umes by another two years from now when they start passing some other laws and they don't think [
sic
] they have it all covered, so the fact that it is not spe­cifi­cally men­tioned does­n't mean the judge can't talk about it or can't order it if it's ap­propri­ate [and] consistent with the legis­la­tive purpose of the stat

ute[,] which is a cita­tion of judg­ment[,] to see what can be done about paying it, which is the Court's respon­sibility to follow up on these things and see what indi­viduals have done."

Accordingly, the trial court denied defendant's motion to vacate and this ap­peal fol­lowed.

At the outset, we note that the record before us con­

sists of the transcript of the November 1998 hearing on the mo­tion to vacate the trial court's September 1998 job search order and the common law record of pleadings and docket entries.  De­

fendant failed to file by­stander's reports or agreed statements of facts of earlier proceed­ings, including the April 1998 hearing at which the trial judge heard the defen­dant testify, the June 1998 hear­ing, and the September 1998 hearing at which the job search order that is the subject of this appeal was pro­nounced. 
 
See 166 Ill. 2d Rs. 323(c), (d).  Although defendant's affidavit suggests he testified at the September hearing, the docket entry makes no reference to evidence being taken.  Further, we note that the trial judge's word­ing in pro­nounc­ing the job search order is not part of the record before us.  We recognize this is a small claims case. 

We first consider defendant's argument that the job search order is not statutorily authorized.  Section 2-1402 of the Code, governing sup­ple­men­ta­ry pro­ceed­ings, pro­vides in per­ti­

nent part as fol­lows:

"(a) A judgment creditor, or his or her suc­cessor in inter­est when that interest is made to appear of re­cord, is enti­tled to prose­cute supplementary proceed­ings for the purposes of exam­ining the judgment debtor or any other person to discover assets or income of the debtor not exempt from the enforcement of the judg­ment, a deduction order or gar­

nishment, and of compelling the application of
 non-exempt assets or income discovered toward the payment of the amount due under the judg­ment."  735 ILCS 5/2-1402(a) (West 1996).

Defendant argues that sec­tion 2-1402 of the Code is inapplicable to the facts of this case.  He as­serts the job search order is void be­cause the purpose of sec­tion 2-1402(a) is to "discover assets or income *** and *** com­pel[] the appli­ca­

tion of *** assets or discovered income" and not to compel defen

dant to 
obtain
 assets or in­come.  

Where the sta­tutory lan­guage is clear and unambiguous, it will be given effect with­out resorting to other construction aids.  
Eagan v. Chicago Transit Authority
, 158 Ill. 2d 527, 532, 634 N.E.2d 1093, 1096 (1994).  Under the clear and unam­bigu­ous lan­guage of section 2-1402(a), no pro­vision for cre­at­ing or or­

der­ing the cre­ation of as­sets exists.  Here, according to the affi­da­vit filed in sup­port of his motion to vacate the order in ques­tion, defen­dant has no known or discovered as­sets.  More­over, the Bu­reau does not argue that defen­dant is con­cealing assets.  

Defendant also argues that the statutory language in section 2-1402(c) of the Code does not provide for a job search order.  De­fen­dant ar­gues that the job search order does not fall with­in the realm of or­ders autho­rized by the stat­ute under the maxim 
inclusio
 
unius
 
est
 
exclusio
 
alterius
, 
i.e.
, the enumer­ation of one thing in a stat­ute implies the ex­clusion of all others.  See 
Baker v. Mill­er
, 159 Ill. 2d 249, 260, 636 N.E.2d 551, 556 (1994)
.  

Section 2-1402(c) gives trial judges broad authority to enter an "appropriate order" "
[w]hen
 assets or income *** are 
dis­cov­ered
."  (Emphasis added.)  735 ILCS 5/2-1402(c) (West 1996).  Even liberally construing section 2-1402(c), we find the statute clearly lim­its the trial court's au­thor­i­ty to situ­a­tions "when as­sets or income *** are dis­cov­ered."  735 ILCS 5/2-1402(c) (West 1996).  More­over, the order must be di­rect­ed to accom­plish any of the six ob­jec­tives enumer­ated in sections 2-1402(c)(1) through (c)(6) of the Code.  735 ILCS 5/2-1402(c)(1) through (c)(6) (West 1996).  Cre­ation of assets is not among the six ob­

jec­tives set forth in section 2-1402(c) of the Code.  Those ob­

jec­tives deal primarily with compelling the judg­ment debt­or to deliver discovered assets or compelling par­ties indebt­ed to the judg­ment debtor to deliver assets.  It makes no mention of creat­

ing or earning as­sets. 

The Bu­reau ar­gues the job search order is con­sis­tent with the purpose and intent of the statute and a con­trary read­ing of the statute would frus­trate the supple­mentary proceed­ings scheme set forth in section 2-1402 of the Code.  The Bureau cor­

rect­ly states that the statute should be con­strued liber­ally (
see 735 ILCS 5/1-106 (West 1996)), but cites no au­thor­i­ty to sup­port the posi­tion that a job search order is appro­pri­ate under these facts.  We disagree with the Bureau's argument that a job search order is essential to the statute's purpose.  We hold that the Code does not au­tho­rize the job search or­der.

In 
In re Marriage of Page
, 162 Ill. App. 3d 515, 515 N.E.2d 1061 (1987), a former husband was ordered to pay child support of $100 per week.  When he failed to do so a petition for rule to show cause was filed, but the court ruled that the ex-

hus­band had not willfully failed to make the payments.  The court then ordered the ex-husband to apply for employment and, when he failed to do so, found him in indirect criminal contempt and sen­

tenced him to 90 days in jail.  The appellate court reversed, holding the job search order was void because it was not autho­

rized by section 505 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 505 (now 750 ILCS 5/505 (West 1996))).  Sec­tion 505.1 was sub­se­quent­ly add­ed to pro­vide that "the court may order the person to seek em­ploy­

ment."  750 ILCS 5/505.1 (West 1996).  We apply a similar analy­

sis here.  Section 2-1402 of the Code, which enacts a procedure unknown to com­mon law, does not by its terms provide for job search or­ders or oth­erwise imply that such orders are appropri­

ate.  The trial court's order must accordingly be vacat­ed.  See also 
People v. Cottrell
, 141 Ill. App. 3d 364, 367, 490 N.E.2d 950, 951 (1986) (section 5-6-3 of the Unified Code of Corrections (730 ILCS 5/5-6-3 (West 1996)) states court may re­quire de­fen­dant to work as a con­di­tion of probation).

Accordingly, we vacate the job search order and remand for further proceedings.  In view of our resolution of this is­

sue, we need not address de­fen­dant's remaining argu­ments.

For the foregoing reasons, we vacate the trial court's job search order, and remand for further proceedings.

Vacated; cause remanded.

McCULLOUGH and MYERSCOUGH, JJ., concur.