2023 IL App (2d) 220217-U
No. 2-22-0217
Order filed May 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| LNL 4EVER, LLC, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 21-MR-876 |
| | ) | |
| GLENDA L. MILLER, McHenry County | ) | |
| Collector, in Her Official Capacity, JOSEPH J. | ) | |
| TIRIO, McHenry County Clerk, in His Official | ) | |
| Capacity, CITY OF CRYSTAL LAKE, and | ) | |
| U.S. BANK, | ) | Honorable |
| | ) | Thomas A. Meyer, |
| Defendants-Appellees. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in dismissing, as untimely, four counts of plaintiff's complaint. Plaintiff's claims—that the municipality's special service area tax was void and violative of due process because, over time, the burdens of the special service area exceeded its benefits—were subject to the five-year catchall limitations period, which accrued on the date the special service area tax became effective, not when plaintiff received a real estate tax bill. Affirmed.

¶ 2    In a five-count complaint, plaintiff, LNL 4EVER, LLC, sought declaratory and injunctive relief against defendants, Glenda L. Miller, in her official capacity as the McHenry County

Collector, Joseph J. Tirio, in his official capacity as the McHenry County Clerk, and the City of Crystal Lake (the City),[1] seeking to invalidate a special service area (SSA) tax levy on properties it owned within the SSA and to enjoin the sale of the properties at a tax sale. The City, later joined by the other defendants, moved to dismiss plaintiff's complaint (735 ILCS 5/2-619.1 (West 2020)), and the trial court dismissed counts I through IV as untimely under the five-year catch-all statute of limitations in section 13-205 the Code of Civil Procedure (Code) (735 ILCS 5/13-205 (West 2020)) and, subsequently, pursuant to plaintiff's motion, dismissed count V. Plaintiff appeals the dismissal of counts I through IV, arguing that: (1) the statute of limitations does not apply because the SSA tax is without a rational basis and results in the deprivation of due process; (2) if the five-year limitations period applies, it did not accrue until plaintiff first received a real estate tax bill for its properties; and (3) alternatively, the annual real estate tax bills serve as a continuing violation extending the statute of limitations. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                        A. SSA

¶ 5     On June 20, 2006, pursuant to the Special Service Area Tax law (Act) (35 ILCS 200/27-5 *et seq.* (West 2020)) and its home rule powers, the City enacted ordinance No. 6081, establishing SSA 45 (SSA) and authorizing the issuance of 30-year bonds (up to $7 million) to pay the costs of certain municipal services, specifically:

> "engineering, soil testing and appurtenant work, grading, stormwater drainage system, storm sewers, site clearing, tree removal and landscaping, water mains, sanitary sewer

---

[1]U.S. Bank, a successor trustee for the special service area bonds, was named as a necessary and indispensable party.

mains, sanitary sewer lift station, erosion control measures, and utility relocation and easement acquisition[.]"

¶ 6    The bonds would be retired by the levy of bond taxes (SSA tax), specifically, an annual tax "to be extended upon the equalized assessed value of the taxable land within the [SSA], *without regard to improvements*," for a period not to exceed 30 years "and to be unlimited as to rate or amount and in addition to all other taxes permitted by law."  (Emphasis in original.)  (The ordinance was recorded on July 19, 2006.)

¶ 7    Also on June 20, 2006, the City enacted ordinance No. 6082, approving the sale of the SSA bonds in the principal amount of $5,935,000.  It also approved the SSA tax through 2029 on the "equalized assessed value of all land in the [SSA], without regard to improvements," sufficient to pay principal and interest on the SSA bonds for the period that the bonds remain outstanding.

¶ 8    The SSA consists of 16 tax parcels.  A residential and commercial subdivision was to be developed in the area.  The commercial development, known as Phase III, was never completed. The residential development, known as Phase I, and related infrastructure, was substantially completed in 2007.  Parcels owned by plaintiff only had storm and sanitary sewers completed, and the City, according to plaintiff, will not allow connections of the sanitary sewers, because its sanitation system requires an upgrade to process sanitary sewer material.

¶ 9    Between 2015 and 2021, plaintiff acquired, at tax deed sales, 15 parcels of real estate in the SSA, consisting of about 200 acres.  Plaintiff failed to pay real estate taxes on some of the properties beginning in 2018 and on other properties beginning in 2019 or 2020.  Four parcels were sold for delinquent taxes in 2018, and their redemption periods have expired.[2]

_____

[2]According to plaintiff, the tax deed proceedings involving these parcels were dismissed,

¶ 10                                    B. Complaint

¶ 11    On October 6, 2021, plaintiff filed its complaint, and, as relevant here, it alleged, in four counts, that the SSA enactments are unconstitutional and/or void.  According to plaintiff, the SSA tax continued to be levied on substantial parcels that were never developed, resulting in the inability of many owners, such as plaintiff, to pay their real estate taxes, including the SSA tax. The taxes, plaintiff further alleged, are far greater than the fair market or equalized assessed value of its properties, and plaintiff is likely to lose the entire market value of its property by virtue of a tax delinquent sale.

¶ 12    Plaintiff also alleged that the total past due real estate taxes and interest for its parcels is over $2.5 million, of which about $2 million resulted from unpaid SSA tax and interest.  Plaintiff asserted that it expected that its properties will be the subject of a tax deed proceeding at some point, because it does not have the resources to pay the SSA taxes.  Four of its properties had been sold for delinquent taxes as of October 29, 2018, the redemption period expired on October 15, 2021, and a hearing for issuance of tax deeds was scheduled for October 28, 2021.

¶ 13    In count I, plaintiff alleged that there was no rational relationship between the SSA tax and any special benefit accorded to plaintiff's real estate.  Thus, this violated the municipal code and the Act and rendered the taxes unconstitutional.  Plaintiff sought a declaration that the taxes were void and unconstitutional.  35 ILCS 200/27-75 (West 2020); 65 ILCS 5/9-2-45 (West 2020).

¶ 14    In count II, plaintiff sought a declaration that, as applied, the SSA tax was oppressive and rendered the properties unmarketable, thereby, violating due process.  In count III, plaintiff sought injunctive relief against defendants from issuing a tax deed on any of plaintiff's property and/or

_____

with prejudice, on October 7, 2022.

selling any of its property at public auction on the county's behalf. Finally, in count IV, which was directed against U.S. Bank as a necessary and indispensable party, plaintiff sought a declaration of the termination of any rights of U.S. Bank and its bondholders (and that neither U.S. Bank, nor its bondholders, had a cause of action against plaintiff or the other defendants) if the court granted plaintiff declaratory judgment relief in counts I or II.

¶ 15                            C. City's Motion to Dismiss

¶ 16     On January 21, 2022, the City moved to dismiss plaintiff's complaint. 735 ILCS 5/2-619.1 (West 2020). As relevant here, it argued as to counts I through IV, that (1) the complaint failed to state a claim that the SSA tax is unconstitutional or void (735 ILCS 5/2-615 (West 2020)), (2) plaintiff waived any objection to the SSA and the SSA tax because it acquired its properties subject to the prior owners' waiver (735 ILCS 5/2-619 (West 2020)), (3) plaintiff is statutorily estopped from challenging the SSA tax (*id.*), plaintiff's claims were untimely under the five-year catch-all statute of limitations (*id.*), and the claims were barred by *laches* (*id.*). As to count V, the City argued that plaintiff failed to state a claim for disconnection from the City (735 ILCS 5/2-615 (West 2020)).

¶ 17     U.S. Bank joined the City's motion to dismiss. Defendants Miller and Tirio, in their official capacities, joined the City's motion as to counts I, II, IV, and V. They also moved to dismiss count III (735 ILCS 5/2-615 (West 2020)), arguing that plaintiff offered no legal basis to enjoin the county defendants from performing their statutory duties other than the harm plaintiff alleged would arise under counts I and II. Because counts I and II lacked merit, defendants asserted, there was no basis to sustain count III, which failed to state a cause of action.

¶ 18                            D. Trial Court's Ruling

¶ 19    On May 18, 2022, the trial court dismissed, with prejudice, counts I through IV, finding they were barred by the statute of limitations. The statute, the court determined, began running in 2006 and expired in 2011. Plaintiff did not purchase its first properties until 2015. The court denied the City's motion as to count V. Subsequently, the court granted, without prejudice, plaintiff's motion to voluntarily dismiss the count. Plaintiff appeals.[3]

¶ 20                                    II. ANALYSIS

¶ 21    Plaintiff argues that the trial court erred dismissing the four counts on the basis that plaintiff's claims were time-barred. It contends that: (1) the statute of limitations does not apply because the SSA tax is without a rational basis and results in the deprivation of due process; (2) if the five-year limitations period applies, it did not accrue until plaintiff first received a real estate tax bill for its properties; and (3) alternatively, the annual real estate tax bills serve as a continuing violation extending the statute of limitations. For the following reasons, we reject plaintiff's arguments.

¶ 22    Preliminarily, we address our jurisdiction. *A.M. Realty Western L.L.C. v. MSMC Realty, L.L.C.*, 2016 IL App (1st) 151087, ¶ 67 ("Although neither party raises the issue of jurisdiction, an appellate court has an independent duty to consider whether or not it has jurisdiction to hear an appeal."). In its initial brief, plaintiff notes that the trial court dismissed count V with prejudice. The common law record, however, reflects that the court, pursuant to plaintiff's motion to voluntarily dismiss (735 ILCS 5/2-1009(a) (voluntary dismissal without prejudice)), dismissed the count *without* prejudice. Authority reviewing supreme court case law suggests that we have

_____

[3]The City filed an appellee's brief in this case. U.S. Bank joined and adopted the City's brief. The county defendants did not file a brief in this appeal.

jurisdiction over this appeal. See *C.O.A.L., Inc. v. Dana Hotel, LLC*, 2017 IL App (1st) 161048, ¶¶ 46-54 (appellate court had jurisdiction over appeal after the trial court, pursuant to the plaintiff's request, voluntarily dismissed remaining count of complaint without prejudice).

¶ 23    Turning to the merits, section 2-619.1 of the Code permits a party to combine a section 2-619 motion to dismiss based upon certain defects or defenses with a section 2-615 motion to dismiss based on a plaintiff's substantially insufficient pleadings. 735 ILCS 5/2-619.1 (West 2020). As relevant here, a section 2-619 motion to dismiss "admits the legal sufficiency of the plaintiff's claim but asserts 'affirmative matter' outside of the pleading that defeats the claim." *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008). Section 2-619 provides for dismissal where the statute of limitations has expired (735 ILCS 5/2-619(a)(5) (West 2020)). When ruling on a motion to dismiss we "construe the pleadings and supporting documents in the light most favorable to the nonmoving party." *Sandholm v. Kuecker*, 2012 IL 111443, ¶ 55. We review *de novo* a dismissal pursuant to section 2-619(a)(5) (*Johnson v. Augustinians*, 396 Ill. App. 3d 437, 439 (2009)), as well as the applicability of a statute of limitations (*Travelers Casualty & Surety Co. v. Bowman*, 229 Ill. 2d 461, 466 (2008)).

¶ 24    Our State Constitution allows home-rule units, counties, and municipalities to levy additional taxes upon areas within their boundaries, and these taxes are used to provide those areas with special services not provided to other areas situated within the boundaries of the particular home rule unit, county, or municipality. Ill. Const. 1970, art. VII, §§ 6(l), 7. These provisions, however, are not self-executing and must be enacted through "enabling legislation" adopted for this purpose. *Oak Park Savings & Loan Ass'n v. Village of Oak Park*, 54 Ill. 2d 200, 204 (1973).

¶ 25    The relevant enabling legislation here is the Act. The Act defines "special service area" and prescribes the procedures to be followed in establishing such areas, including provisions for

public notice of, and hearings related to, the creation of these areas, as well as the methods to be followed in order to object to the tax. In addition, our supreme court has held that an SSA tax created pursuant to the powers delineated above is presumptively valid. See *Coryn v. City of Moline*, 71 Ill. 2d 194, 198 (1978) ("An ordinance adopted by a local unit of government, which purports to exercise a power vested in that local unit of government by our constitution (and statutes, if applicable), is presumptively valid.").

> "The [Act] represents a new concept of taxation in Illinois, referred to as a 'differential' tax, and is a departure from the requirement of uniformity contained in the 1870 Constitution. *Oak Park Federal Savings & Loan Ass'n v. Village of Oak Park*, 54 Ill. 2d 200, 204 (1973). The purpose of the [Act] was to authorize units of local government to tax different areas within their boundaries at different rates as the services to those areas required. This innovation was intended to discourage the further proliferation of special units of local government that provide only limited governmental services. *Hiken Furniture Co. v. City of Belleville*, 53 Ill. App. 3d 306, 309 (1977)." *East Lake Fork Special Drainage District v. Village of Ivesdale*, 137 Ill. App. 3d 473, 479-80 (1985).

¶ 26    With this background in mind, we next turn to plaintiff's arguments.

¶ 27                        A. Whether a Limitations Period Applies

¶ 28    Plaintiff argues first that a statute of limitations does not apply here because the SSA tax is void as being without a rational basis and results in the deprivation of due process. The SSA is void, plaintiff asserts, because it never fulfilled its intended purpose. The planned construction of the commercial development was never realized (specifically, only storm and sanitary sewers were completed), but the SSA tax continued to be levied on substantial parts of real estate that were never developed. (It notes that it pleaded that the SSA tax is unconstitutional, as applied.)

¶ 29    In count I, plaintiff alleged that the burdens of the SSA tax exceeded its benefits and there is no rational relationship between the amount of the SSA tax and the special benefit. Thus, the lack of rational basis rendered the tax unconstitutional. In count II, plaintiff alleged that the SSA tax violated due process.

¶ 30    Plaintiff relies on *Keystone Montessori School v. Village of River Forest*, 2021 IL App (1st) 191992, for the proposition that a contract or agreement that is void is not barred by the statute of limitations. *Keystone* concerned the validity of certain contracts between a school and a village providing that the school would waive its right to a property tax exemption and arguments that it was contrary to public policy. Addressing the village's argument that the trial court erred in failing to determine that the complaint was barred by the statute of limitations, the reviewing court concluded that the contracts were void *ab initio* and the challenge to its validity was not subject to a statute of limitations. *Id.* ¶ 89. In reaching its conclusion, the court compared a contract that is void *ab initio* to statutes that are unconstitutional "on their face" and noted that they may be challenged at any time. *Id.*

¶ 31    We find *Keystone* inapposite because the language upon which plaintiff relies therein references facially unconstitutional statutes. See *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008) ("[A]n enactment is facially invalid only if no set of circumstances exists under which it would be valid."). Here, plaintiff did not challenge the SSA tax on its face, but, rather, as applied. See *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 12 (an as-applied challenge requires a showing that the statute is unconstitutional as it applies to the specific facts and circumstances of the challenging party). Besides *Keystone*, plaintiff cites only foreign authority to support its claim, which is not binding on this court. *In re Marriage of Moorthy & Arjuna*, 2015 IL App (1st) 132077, ¶ 57 n.2.

¶ 32    Illinois courts considering as-applied constitutional challenges have applied statutes of limitations.  See, *e.g.*, *Langendorf v. City of Urbana*, 197 Ill. 2d 100, 111 (2001) (as applied challenge to zoning ordinance; "a limitations period may be applied to a constitutional claim"); *Smart Growth Sugar Grove, LLC v. Village of Sugar Grove*, 375 Ill. App. 3d 780, 782-87 (2007) (as-applied challenge to zoning ordinance); *People ex rel. Foreman v. Village of Round Lake Park*, 171 Ill. App. 3d 443, 455 (1988) (as-applied challenge to rezoning; "the fact that a cause of action arises under a constitutional provision does not preclude the running of a statute of limitations against that cause of action").

¶ 33    Section 13-205 of the Code imposes a five-year limitation period on "all civil actions not otherwise provided for."  735 ILCS 5/13-205 (West 2020).  The supreme court, in *Sundance Homes, Inc. v. County of Du Page*, 195 Ill. 2d 257, 280 (2001), noted that it has applied this provision to tax refund cases where the claimants challenged a municipal sales tax (*Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 407 (1989) ("taxpayers cannot recover disputed taxes if their suit is barred by the statute of limitations")) and in an action seeking a refund of impact fees (*Raintree Homes, Inc. v. Village of Kildeer*, 302 Ill. App. 3d 304, 307-08 (1999)).

¶ 34    In *Raintree Homes*, the plaintiff, a residential home builder, brought a declaratory judgment action against a village, seeking a refund of impact fees it paid as a condition of obtaining a building permit for a residential unit.  The plaintiff argued that the fees were unconstitutional and beyond the village's statutory authority.  The trial court dismissed the complaint, and the reviewing court reversed and remanded, concluding that the five-year limitations period in section 13-205 of the Code applied, rather than the one-year limitations period under the Local Governmental and Governmental Employees Tort Immunity Act.  *Id.* at 307-08.  It noted that the complaint

challenged the constitutionality of two ordinances and was not a tort action but, rather, based on an abuse of governmental authority. *Id.* at 307.

¶ 35    Given this authority, the five-year limitations period in section 13-205 of the Code applies to plaintiff's challenge to the SSA tax.

¶ 36                    B. Accrual of Five-Year Limitations Period

¶ 37    Next, plaintiff argues that, if the five-year limitations period in section 13-205 of the Code applies,[4] it did not accrue until 2016, when plaintiff first received a real estate tax bill.

¶ 38    The SSA was established in 2006, and the SSA tax was authorized the same year.  The trial court determined that the five-year statute of limitations expired in 2011.  Plaintiff purchased properties in the SSA between 2015 and 2021, and it filed its complaint in 2021, 15 years after the SSA's creation.

¶ 39    Plaintiff contends that, by 2011, when the trial court found that the limitations period had expired, plaintiff did not own any properties within the SSA.  Thus, it reasons, it did not have a cause of action against any defendant for conduct related to the SSA and SSA tax.  No cause of action could have ripened until 2016, it asserts, after it had purchased properties within the SSA and began receiving real estate tax bills.  (Plaintiff maintains that there was an injury beginning in 2015, when it became an owner of at least one property within the SSA.  Further, it asserts that there was no liability or harm to it until it received the first real estate tax bill in 2016.)  Plaintiff notes that it never challenged the procedures the City utilized in enacting the SSA and the SSA

_____

    [4]Plaintiff does not dispute that, if a limitation period applies to its claims, the five-year period in section 13-205 of the Code is the relevant limitations period.

tax. Rather, it contends, the tax bill was the harm to it, as that was the method by which liability was imposed on it for its ownership of the properties within the SSA.

¶ 40    "The validity of a tax is to be determined as of the time it is levied." *People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.*, 316 Ill. 410, 415 (1925); *Raintree Homes*, 302 Ill. App. 3d at 307 (constitutional challenge to village impact fees; five-year catchall limitations period accrued when ordinance became effective); see also *Universal Outdoor, Inc. v. Elk Grove Village*, 969 F.Supp. 1125, 1128 (N.D. Ill. 1997) (applying Illinois law; village passed ordinance banning billboards but granted the plaintiff a 12-year variance from ordinance; after variance expired, the plaintiff sued, alleging ordinance unconstitutionality infringed on its right to permanent variance; holding that statute of limitations began to accrue when ordinance was passed).

¶ 41    In *Super Mix of Wisconsin, Inc. v. Natural Gas Pipeline Co. of America, LLC*, 2020 IL App (2d) 190034, the plaintiffs acquired interest in a parcel in 2003, subject to a pipeline easement granted to the defendant in 1945. The easement was recorded in 1945. The plaintiffs mined sand and gravel, and, in 2015, as their operation proceeded toward the pipeline, they asked the defendant to reroute the pipeline. The defendant refused. The plaintiffs filed a declaratory judgment action and sought damages for inverse condemnation. The trial court dismissed their claims as time-barred. This court affirmed. *Id.* ¶ 3. We held that any cause of action under the easement agreement accrued in 1945 when the plaintiffs' predecessors in interest knew or reasonably should have known of the injury to the property and that the injury was wrongfully caused. *Id.* ¶ 41. The easement's limitation on the property, we further noted, occurred in 1945, not when the plaintiffs discerned, in 2015, that the "defendant would not voluntarily relinquish its easement rights upon request." *Id.* (citing Robert Kratovil, Real Estate Law § 74 (7th ed. 1979) ("Pipeline Easements:

'Once an easement has been placed in a location or its location is fixed by the easement grant, its location cannot be changed without consent of the easement owner.' ")). Plaintiffs purchased the property in 2003, we noted, with notice of the pipeline and the easement authorizing it. *Id.* ¶ 49.

¶ 42     Here, plaintiff argues that it does not challenge the procedures the City utilized in enacting the SSA and SSA tax, thus, agreeing that it was valid when enacted. However, it contends that, *at some point*, the SSA tax became invalid/unconstitutional and the tax bills it received caused harm to it. We reject this argument.

¶ 43     The SSA and the SSA tax were enacted in 2006 and became matters of public record when ordinance No. 6081 was recorded in July 2006. It was at this point that the prior owners knew or had reason to know of their claim, thus, triggering commencement of the statute of limitations. *Id.* ¶¶ 41, 46. The period expired in 2011, as the trial court found. Thus, by 2015, when plaintiff began acquiring properties through tax sales, the five-year limitations period had run.

¶ 44     Plaintiff's argument that the SSA tax is void as a result of the SSA's inability to fulfill its intended purpose (*i.e.*, residential and commercial development) is not well taken.

> "The taxes imposed upon property within a special services area need not directly correspond to the monetary value of the benefits received. Under the equal protection and due process clauses of the constitutions of Illinois and the United States there need only be a rational basis for taxing a given area for a given 'special service,' and we hold that the mere alleged excess of additional taxes payable over additional services received does not render the whole scheme of taxation irrational and unconstitutional." *Coryn v. City of Moline*, 71 Ill. 2d 194, 202 (1978).

See also *Village of Glenview v. Ramaker*, 282 Ill. App. 3d 368, 371 (1996) ("Courts will not disturb an exercise of police power merely because there is room for a difference of opinion about the wisdom or necessity of its exercise.").

¶ 45     The fact that commercial development of the SSA did not occur and resulted in taxes that exceed the value of plaintiff's properties does not render the SSA tax unconstitutional, especially where the SSA ordinance (which provided that the SSA tax would be extended upon the equalized assessed value of the taxable land without regard to improvements) was recorded and where plaintiff acquired its properties at tax sales and thereby had knowledge of the SSA tax and that prior purchasers could not (or would not) pay the SSA and other taxes on the properties.  Plaintiff offers no relevant support for its assertion that it has a valid constitutional claim based on its argument that, over time, the SSA never fulfilled its intended purpose and thus, the SSA tax became void.

¶ 46     Finally, even if the discovery rule applied to extend the statute of limitations, the result here would be the same.  Because literal application of the statute of limitations can produce harsh results, the discovery rule was developed to delay commencement of the statute of limitations. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77 (1995).  When the rule is applied, the limitations period does not commence until the plaintiff knows or reasonably should know that it has been injured and that its injury was wrongfully caused.  *Id.*  Assuming the discovery rule applies to constitutional challenges, the result here would not change because plaintiff would have known of its potential claim in 2015, when it *first* started purchasing properties in the SSA.  (As reflected in its complaint, at the time of its purchases, it was aware of the SSA tax, the bond authorization, etc.)  The five-year limitations period would have expired in 2020.  Plaintiff did not file its complaint until 2021, and, therefore, it was untimely.

¶ 47                              C. Continuing Violation

¶ 48    Finally, in the alternative, plaintiff argues that the annual real estate tax bills serve as a continuing violation extending the statute of limitations. Given our resolution of the accrual issue above, we need not address this claim. However, as it is easily resolved, we choose to briefly address it, and conclude that, because the doctrine is limited to tort claims, it has no application here.

¶ 49    "Generally, a limitations period begins to run when facts exist that authorize one party to maintain an action against another. [Citations.] However, under the 'continuing tort' or 'continuing violation' rule, 'where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.' [Citations.]" *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 278 (2003); see also *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 345 (2002) (and cases cited therein) ("Under the 'continuing violation rule,' embraced by our appellate court, where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease.").

¶ 50    In counts I and II, plaintiff sought a declaration that the SSA taxes are unconstitutional. In count III, plaintiff sought injunctive relief against defendants from issuing a tax deed on any of plaintiff's property and/or selling any of its property at public auction on the county's behalf. Finally, in count IV, directed against U.S. Bank, plaintiff sought a declaration of the termination of any rights of U.S. Bank and its bondholders if the court granted plaintiff declaratory judgment relief in counts I or II. Thus, plaintiff did not raise any tort claims. Accordingly, the continuing violation doctrine does not apply. *Cf. Hassebrock v. Ceja Corp.*, 2015 IL App (5th) 140037, ¶ 33 (concluding same as to breach of contract and breach of fiduciary duty claims); see also *Hyon*

*Waste Management Services, Inc. v. City of Chicago*, 214 Ill. App. 3d 757, 765 (1991) (municipality's sealing of hazardous waste incinerator not subject to doctrine; due process claim barred by statute of limitations).

¶ 51                                III. CONCLUSION

¶ 52    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 53    Affirmed.